Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Catherine Boettcher*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Catherine Boettcher,<br><br>Plaintiff,<br><br>v.<br><br>Metropolitan Life Insurance Company; International Business Machines Corporation; IBM Long-Term Disability Plan,<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Catherine Boettcher (hereinafter referred to as “Plaintiff”), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

***Jurisdiction***

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

***Parties***

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, International Business Machines Corporation (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy (hereinafter referred to as the "Policy") which was fully insured by Metropolitan Life Insurance Company (hereinafter referred to as "MetLife"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees. Upon information and belief, the MetLife Policy may have been included in and part of an employee benefit plan, specifically named the IBM Long-Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, MetLife functioned as the claim administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in MetLife.

5. MetLife operated under a financial conflict of interest in evaluating her long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled, as well as the payor of benefits if it found she was disabled.

6. The Company, MetLife and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Arizona.

***Venue***

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

***Nature of the Complaint***

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to from the Company, the Plan and any other Company Plan as a result of being found disabled in this action.

9. Plaintiff also seeks a determination in this action that she is disabled and meets the "Any Occupation" definition of disability set forth in the Plan and the relevant Policy as the evidence she submitted to MetLife supports such a determination by the Court. Plaintiff alleges whether she meets the "Any Occupation" definition is ripe before the Court due to the fact that the "Own Occupation" timeframe in the Plan and Policy has long since expired, and Plaintiff has remained disabled and unable to work in any occupation through the present date, which includes the time frame for the "Any Occupation" definition in the Plan and Policy.

10. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 8, 2013, due to serious medical conditions and was unable to work in her designated occupation as a Business Operations Manager. Plaintiff has

remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to work in any occupation as a result of her serious medical conditions.

11. Following her disability, Plaintiff filed a claim for short term disability which her Company, which upon information and belief, contained an "Own Occupation" definition of disability. After review, the Company found she was disabled and paid all her STD benefits and they have been exhausted.

12. Plaintiff then filed for long term disability benefits under the relevant Policy which was administered by MetLife, meaning that it made the decision with regard to whether Plaintiff was disabled.

13. The MetLife Policy provides the following definition of disability pertaining to long-term disability benefits:

> "Under the LTD Plan, 'disabled' means that during the elimination period and the first 12 months after you complete the elimination period, you cannot perform the important duties of your regular job with IBM because of a sickness or injury. After expiration of that 12 month period, disability means that, because of sickness or injury, you cannot perform the important duties of any other gainful occupation for which you are reasonability fit by your education, training or experience."

14. In support of her claim for long term disability benefits, Plaintiff submitted to MetLife medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

15. Plaintiff submitted to MetLife an April 15, 2014 Attending Physician's Statement completed by her board certified family physician who confirmed it is his medical opinion Plaintiff, "…can work a total of zero hours per day."

16. In a letter dated June 12, 2014, MetLife informed Plaintiff it was denying her claim for long term disability benefits.

17. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed MetLife's June 12, 2014 denial of her claim and in support of her claim for long term disability benefits, Plaintiff submitted to MetLife additional medical evidence demonstrating that she met any definition of disability set forth in the Policy.

18. Plaintiff submitted to MetLife a July 30, 2014 medical record from her board certified treating family physician who concluded, "[Plaintiff] is not ready to return to work…She is able to sit for 15 minutes and less than 30 minutes. Then she needs to get up to walk around."

19. Plaintiff also submitted an October 21, 2014 medical record from the same treating physician who concluded she was "Not able to return to work at this time."

20. Plaintiff also submitted to MetLife a February 23, 2015 narrative letter from her treating physician who confirmed that it is his medical opinion, that "…[Plaintiff] has been unable to return to work in her current position with IBM…"

21. As part of its review of Plaintiff's claim for long term disability benefits, MetLife obtained a medical records only "paper review" from a physician of its choosing, Richard B. Evans, M.D.

22. Upon information and belief, Plaintiff alleges Dr. Evans may be a long time medical consultant for the disability insurance industry and/or MetLife. As a result, Plaintiff alleges Dr. Evans may have an incentive to protect his own consulting relationship with the disability insurance industry and/or MetLife by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's

claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

23.     Prior to rendering its final denial in Plaintiff's claim, MetLife never shared with Plaintiff the report authored by Dr. Evans and never engaged Plaintiff in a dialogue so she could respond to the report and perfect her claim. MetLife's failure to provide Plaintiff with the opportunity to respond to Dr. Evans' report precluded a full and fair review pursuant to ERISA. MetLife's action is also an ERISA procedural violation and a violation of Ninth Circuit case law.

24.     In a letter dated March 5, 2015, MetLife notified Plaintiff it had denied her claim for long term disability benefits under the Policy. In the letter, MetLife also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

25.     Plaintiff alleges that the Company's approval of her STD claim and MetLife's denial of her LTD claim, so near in time to one another and when both claims contained essentially the same definitions of disability, is evidence that MetLife's financial conflict of interest was a motivating factor in why it denied Plaintiff's LTD claim. Plaintiff alleges MetLife was motived to deny her LTD claim as its financial liability to her was much larger than the Company's liability given that if MetLife approved her claim it may have had to pay her claim for many years into the future.

26.     Upon information and belief, MetLife's March 5, 2015 denial letter confirms it failed to provide a full and fair review, and in the process committed several procedural violations pursuant to ERISA due to among other reasons, completely failing to credit, reference, consider, and/or selectively reviewing and de-emphasizing most, if not all of Plaintiff's reliable evidence.

27. In evaluating Plaintiff's claim on appeal, MetLife owed her a fiduciary duty and it had an obligation pursuant to ERISA to administer her claim, "solely in her best interests and other participants," which it failed to do. [1]

28. MetLife failed to adequately investigate Plaintiff's claim and failed to engage her in a dialogue during the appeal of her claim with regard to what evidence was necessary so that Plaintiff could perfect her appeal and claim. MetLife's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law, and is a reason she did not receive a full and fair review.

29. Plaintiff alleges MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim; failing to credit Plaintiff's reliable evidence; providing a one sided review of Plaintiff's claim which favored MetLife and that failed to consider all the evidence submitted by her and/or which de-emphasized the evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work, not only in her occupation but in any occupation; failing to engage Plaintiff in a dialogue so she

[1] It sets forth a special MetLife of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects that Plaintiff's medications would have on her ability to engage not only in her occupation with the Company, but in any occupation.

30. Plaintiff alleges a reason MetLife provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due in part to its financial conflict of interest that manifested as a result of the dual roles MetLife undertook in her claim as the decision maker and payor of benefits. MetLife's conflict of interest provided it with a financial incentive and a motivation to deny Plaintiff's claim.

31. Plaintiff is entitled to discovery regarding MetLife's aforementioned conflicts of interest, the potential conflicts of interest of Dr. Evans, as well as any other individual who reviewed her claim and the Court may properly weigh and consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of interest and/or ERISA procedural violation which may have impacted or influenced MetLife's decision to deny her claim.

32. With regard to whether Plaintiff meets the definition of disability set forth in the Plan and/or Policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the Plan and/or Policy confers discretion, the unlawful violations of ERISA committed by MetLife as referenced herein are so flagrant they justify *de novo* review.

33. As a direct result of MetLife's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost long term disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan, any other Company Plan and/or the Company as a result of being found disabled in this action. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits,

retirement benefits or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

34. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

35. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff her long term disability benefits in the form of "Own Occupation" benefits as defined in the relevant Plan and/or Policy as well as any other employee benefits she may be entitled to as a result of being found disabled pursuant to the Plan and/or Policy, from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as she meets the conditions for termination of benefits;

C. For an Order that Plaintiff also meets the "Any Occupation" definition of disability set forth in the relevant Plan and/or Policy and is entitled to those benefits along with an Order directing Defendants to continue paying Plaintiff those benefits and any other employee benefits she may be entitled to as a result of being found disabled, until such time as she meets the conditions for termination of benefits;

D. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

E. For such other and further relief as the Court deems just and proper.

DATED this 25th day of September, 2015.

SCOTT E. DAVIS. P.C.

By: /s/ Scott E. Davis
Scott E. Davis
Attorney for Plaintiff